May it please the court. Last summer Mr. Sutton filed for incapacitation release. He presented myriad reasons for relief. Along with the high risk posed by COVID, he also cited the length of his sentence, 52 years, the fact that he was, at the time of his conviction, essentially a first-time offender. His federal crimes dated back to 1997 and before his indictment in 2001 he was convicted for a bank robbery in 1998. He cited his military records, four years of service and an honorable discharge, his positive rehabilitation in prison, presented myriad certificates, his work history, documented programming and letters. His 112-page filing presented a compelling case for why such an extreme trial penalty, he had walked away from a single count to a robbery that would have allowed the judge to impose concurrent time and instead went to trial and received 52 years, was an extraordinary and compassionate release and merited a reduction in his sentence according to Judge Crabb's discretion. Those are all compelling reasons, reasons that judges across the country and in this circuit have found met the compassionate release standard. Unfortunately, Judge Crabb didn't get to that question. Instead she was stuck at step one and didn't get past that. She believed that it was up to the director of the Bureau of Prisons to determine what is an extraordinary and compelling basis for relief. At the time it was an open question and courts were on either side of the question, but this court's decision and gun kind of result, does result that the district court has a discretion checked only by a deferential appellate review. Since Judge Crabb has the discretion and she was never able to exercise it, the question is whether or not she would have denied Sutton's petition no matter what. When it comes to harm, that is whether or not the question or the decision was harmless. This court has to be convinced that upon remand, remand would be futile. That she would reach the exact same result looking at the exact same aspect of discretion and she'd come out the same way. When that happens we usually have a clear statement. We have something in the record where she says, look if the BOP has discretion or I fashion it, no matter what Sutton doesn't get relief. But we have nothing in the record. In fact the record shows that she's sympathetic to the claim. She could be persuaded by the claim and that Sutton does have merit to his claim, but she doesn't feel that she can get to that. When that the court is presented with that type of situation, the appropriate remedy is remand and allow Judge Crabb to exercise her discretion whether she grants relief or denies it. It should be up to the court to decide whether or not to grant relief or deny it. I think that went to the COVID relief problems of hey I need to let him out today. That's a different question. Whether or not she would let him out in five years or today, what the risk poses there. I think there's also the fact that she didn't have the full benefit of, I'm not limited to the health reasons. Your diabetes though concerning may not be the reason that I would reduce your sentence. And she doesn't have to reduce it in full. There's nothing in the extraordinary and compelling standard that says a judge has to go from 52 to time served. Instead she could have incrementally walked it back and said I really didn't think you needed 52, but 30 is the appropriate sentence here. And I feel like once you're in your mid-50s you'll no longer be a threat. But your early 50s, I'm not convinced. I take that less as a... Go ahead. Go ahead and finish your thought please. No, no, your honor. Please. I'm not convinced on the legal authority point yet. How does she have the legal authority to deal with or to address the prospective effect, if you will, of the First Step Act amendment to the stacking provisions in 924C through a 3582 compassionate release motion? Well, I believe that 3582 presents... It opens the door for her to allow for that. And it's not just that the stacking has been undone, but that in this individual case, and only in this individual case, that that is extraordinary and compelling. It's not that as a general policy matter I think all stacking should be undone. That's up to Congress to do. And if it wanted to make it that this extreme case, this extreme and unjust punishment, in her view, is extraordinary and compelling. Hold on. Let me ask the question a different way. In 403B of the First Step Act, Congress made an express determination with respect to the applicability of the amendment to the stacking that's otherwise allowed in 924C. And it decided by the terms of 403B to apply that prospectively. And your client here is saying through 3582, I'd like the benefit of that extraordinary, compelling, or otherwise to grant that relief. So let me give you an example, Mr. Bugman. Suppose, for example, five or six years ago, before the First Step Act, an offender came in who was serving a mandatory minimum sentence for, you know, you name it, producing child pornography, engaging in an act of terrorism, etc. And with the support of the BOP, argued that he should be out from under the otherwise statutory mandatory minimum sentence and invoked 3582. Could he do that? If the BOP supported it and it was under the director of the BOPs under 1B1.3, you know, the catch-all provision, yes, he could. If that was what the BOP had determined. Under a statutory mandatory minimum sentence? Where have we held that? You haven't because the BOP has never endorsed that. And I don't think that the BOP would endorse that, but if it had, that's what the guideline allows the BOP to do. How can the guideline allow you out from something that Congress made as a mandatory minimum? Well, because the guideline works in conjunction with 3582, and Congress has allowed for that, and it says for a safety valve. In extreme situations, we're going to create this safety valve. And it's not in every case. There are district court judges who say, this is a once in a career kind of case. I was always bothered by the 50 years I had to give that young man. So it's not that in every case, all mandatory minimums are undone. It's those that the judges find to be extraordinary and compelling. And what the mandatory minimums prescribe has to be read against 3582. Mr. Bugney, Mr. Bugney, I'm Judge Easterbrook, the disembodied voice here. And I would like you to deal with Judge Scudder's question, which is also mine, just in terms of the statutory language. My question is, in what sense is it extraordinary to enforce a sentence that is legally required? If it's extraordinary that, sorry, Your Honor, I'm going to answer your question precisely. The extraordinary part of it is that we see it differently now, that times have changed. No, that's not going to do because the First Step Act expressly does not make retroactive. It's prospective change in how these sentences are run consecutively. So my question remains, in what sense is it extraordinary to implement a sentence that was legally required when imposed and still is legally required? It's extraordinary in that people around the country, others are not, the same crime is not being punished in the same way. It's not that it's extraordinary, Your Honor. That sounds like a contention that other district judges are making legal mistakes. It's not our job to figure out what district judges outside the circuit are doing. It's our job to figure out what the statutory language means. And I wish you'd deal with my question in terms of the statutory language. Your Honor, I would cite then to the Brooker opinion out of the Second Circuit, where they say there's a distinction between vacator being allowed for everybody. And in these individual cases, for courts to say that stands as extraordinary and compelling. And 3582 has always been the small safety hatch for the finality of sentences. So it has to run in even though a person does deserve to serve out their full sentence, 3582 allows for us to say the finality is not final in that small instance. I'd also say, Your Honor, the McCoy decision deals exactly with your question, as well as a Mananoo out of the Tenth Circuit. In all of those cases, the court said the interaction between 3582 and the finality that we usually impose upon sentences, they work in conjunction. And 3582 allows that override in the extraordinary compelling circumstance. Does that answer your question, Your Honor? I must say it doesn't. It's the statute allows an override in an extraordinary and compelling circumstance. But my question is, what makes implementing a legally valid, indeed legally required sentence extraordinary? But our time has run out. Thank you, Your Honor. Thank you, Mr. Anderson. Thank you, Your Honors. May it please the court, I'm Steven Anderson for the United States. The court does not need to reach the merits of the stack sentencing argument in this case. And this court should affirm because independent of that decision, or that argument, and any gun error, the district court found that two 3553A factors, in particular, the seriousness of Sutton's violent crimes, and the court's inability to conclude he no longer posed a danger to the community, warranted the denial of compassionate release. That conclusion is not an abuse of discretion. And affirming the order on that basis is supported by the court's opinion in Sanders cited in the government's second 28J letter, along with at least two unpublished orders. However, regarding the merits of the stack sentencing issue, consistent with the Sixth Circuit's opinions and wills and tomes, the district court's reliance on the non-retroactivity of the First Step Act's changes was correct for at least three reasons. First, Congress's deliberate decision to change the penalties for the class of 924C defendants without making the change retroactive is an ordinary and usual sentencing practice, and a disparity created by post extraordinary under 3582C1A. Second, the First Step Act expanded the gatekeeper function for these motions, but nothing suggested it expanded the category of offenders eligible for relief or the grounds for these motions, which remain rare, unique, and defendant-specific. A condition common to a large group of people does not satisfy that standard. Mr. Anderson? Third? Yes. Um, if we go back five or six years, let me ask you the same question I put to Mr. Bugney. You have an offender serving a statutory mandatory minimum sentence who says, well, I'm going to bypass 2255 and disregard it, and I'm going to invoke 3582, and I'm going to point to what I believe are extraordinary circumstances grounded in my rehabilitation, my remorse, etc. Was there a legal authority to do that before the First Step Act? I don't believe so, Your Honor. Okay, and why not? Well, under 1B113, the court in Gunn established that the... I just don't see how the guidelines have anything to do with it. Can you repeat the question, Your Honor? I think all I'm trying to get at is that 3582 is a general provision, an important one to be sure, that has the extraordinary and compelling circumstance language in it that we're talking about. But I don't know how 3582 can be used to authorize mandatory sentences prescribed by Congress for particular offenses. I'm not aware of authority that allows that. I don't think there is, Your Honor. It would have to be if the Sentencing Commission had a policy statement to that effect, which I don't believe there is, or if there... I guess I don't believe there is authority. Right, and so when Congress comes along in the First Step Act and in 403B expressly tells us that the new anti-stacking provision is going to apply prospectively, doesn't Congress do that against the backdrop of the understanding that I just articulated, as well as the ordinary practice of applying or leaving sentences in place when changes in law come about? I believe so. Right, and so I don't know how... I don't understand how there's any legal authority to do what Mr. Bugney's client is asking us to do. That's the government's position that there is none. And I would just get to the third point for the stacked sentencing issue. The District Court's rejection of Sutton Stacked Sentencing argument as unauthorized is consistent with using 1B.1.13 as a non-binding working definition of extraordinary and compelling reasons, which this Court approved in Gunn. The defendant's position would create sentencing disparities with other previously sentenced 924C defendants and result in the Wild West scenario that Gunn expressly cautioned against, with District Courts deciding on a case-by-case basis whether to apply a non-retroactive sentencing change. But if there are no further questions, the government will stand on the arguments in our brief and urge this Court to affirm the District Courts for all the reasons identified in the 924C issues. Thank you, Mr. Anderson. Mr. Bugney, your time has expired, but you may have a minute if you have further rebuttal. Thank you, Your Honor. I'd like to address Judge Scudder's question. It had always been that the Director of the Bureau of Prisons, before the First Step Act, could petition and get someone out from a mandatory minimum. It wouldn't be that the mandatory minimum was unjust, but it could be that the Director always has that power. And § 2255 and § 3582 offer distinct remedies. So it's not that they work in opposition to one another or that there's an end around in one. It's just that this is the entire statutory scheme that Congress has presented it with. The final point is that when we're dealing with how these statutes interact, it's not simply that we look back and say, gosh, you got a raw deal. You got sentenced to too much. It's that we look at all of the factors. We look at the rehabilitation. We look at what you would have gotten today. We look at what, you know, what you were as a person then, how young you were. And all of those factors are what the District Court is supposed to weigh within the extraordinary and compelling basis. It's not the single factor. Thank you, Your Honors. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement.